UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-20522-CR-ROSENBERG/GARBER

UNITED STATES OF AMERICA,

v.

DEANGELO THOMPSON,
     Defendant.
_____/

## ORDER

THIS CAUSE is before the Court on Vice Media, Jonathan Lutsky and David Laven's Motion to Quash Subpoenas (DE 37) which relates to the defendant Deangelo Thompson's Motion to Suppress Evidence and Statements and Memorandum of Law in Support Thereof (DE 18) which in turn was referred to the Court by United States District Judge Robin. L. Rosenberg (DE 33). A hearing was held before the Court on the motion to quash on April 10, 2015. Upon due consideration the Court hereby GRANTS the motion for the following reasons.

By way of background, shortly after midnight on March 1, 2014, City of Miami police officers arrested Thompson on the front porch of a building in the Liberty Square public housing apartment complex. The circumstances leading up to this arrest and the propriety of the arrest itself are currently the subject of a motion to suppress now pending before the Court. In that motion, Thompson contends that he was arrested without probable cause.

The government, in its response to Thompson's motion to suppress, revealed that on the night of Thompson's arrest, the arresting officer, Officer Hinson, was accompanied, both at some point before as well as during the arrest, by a film crew from Vice Media, an international news organization based in New York. Because Thompson believes that the footage obtained by Vice that

night is relevant and necessary for a determination of whether Officer Hinson had probable cause for the arrest, he subpoenaed Vice and its representatives to produce the video footage from the ride-along as well as of the arrest itself. He also subpoenaed the testimony of Vice producer, David Laven, who accompanied the film crew that night and who, Thompson believes, conversed with Officer Hinson about the events that unfolded prior to and during the arrest. Vice responds that Thompson's subpoenas are improper. The Court agrees with Vice.

Under well-settled first amendment law, news organizations are generally protected from compelled testimony and disclosure of unpublished journalistic information by a constitutional privilege. This qualified privilege bars a litigant from compelling production or testimony in all but the most exceptional cases. *See U.S. v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013). The privilege can shield reporters in both criminal as well as civil proceedings, "allowing them to resist compelled disclosure of their professional news gathering efforts." *Id*. This privilege is derived from the chilling effect that "forcing journalists to testify in judicial proceedings about the substance of their news reports" would have on an independent and free press. *See U.S. v. Diaz*, No. 03-20895-CR, 2004 WL 1944851, at *1 (S.D. Fla. 2004). This chilling effect can be manifested in any number of ways: judicial intrusion into the news gathering process; the disadvantage of a journalist appearing to be a research arm of the government or a private party; the disincentive to compile and preserve non-published material; and the burden on journalists' time in having to respond to subpoenas. *See Shoen v. Shoen*, 48 F.3d 412, 416 (9th Cir. 1995).

The Eleventh Circuit has made clear that the privilege enunciated above may be overcome only if the information sought is shown to be: (1) "highly relevant"; (2) "necessary to the proper presentation of the case"; and (3) "unavailable from other sources." *U.S. v. Caporale*, 806 F.2d 1487,

1504 (11th Cir. 1986). Overcoming the standard is a "heavy burden" and the standard must be met by clear and convincing evidence. *See McCarty v. Bankers Ins. Co.*, 195 F.R.D. 39, 47 (N.D. Fla. 1998). The Court finds that Thompson has not met this heightened burden.

With respect to whether the information Thompson seeks is (1) highly relevant, Thompson focuses on two distinct aspects of Vice's involvement with Officer Hinson on the night of the arrest. First, Thompson contends that both video footage taken as well as conversations Officer Hinson may (or may not) have had with Laven prior to and leading up to his arrest are "directly relevant to the credibility of Officer Hinson's claim that he saw Mr. Thompson engage in drug sales earlier that evening." (Def. Resp. DE 44, 6.) Thompson alleges that the video footage and Laven's testimony "will reveal no communications between Officer Hinson and Vice concerning Mr. Thompson, or why Officer Hinson went to Thompson's location" and that this absence of communication "will be highly relevant to the Court's assessment of Officer Hinson's credibility." (*Id*. at 3.) According to Thompson's argument, when video crews accompany officers, it is common practice for the officers to narrate as the events that are being filmed unfold. Thompson's theory is that if Officer Hinson did not discuss with Laven or the film crew whether there was probable cause for the arrest, his silence would prove that there was in fact no probable cause. Alternatively, Thompson proposes, any conversations that the officer did have with the film crew might also affirmatively confirm that there was no probable cause. The Court finds all of this to be highly speculative and conjectural: the sum total of Thompson's allegations amount, at most, to a showing of potential relevance rather than a showing of actual relevance. *See Shoen*, 48 F.3d at 416 ("a showing of potential relevance will not suffice"). Whether Officer Hinson discussed Thompson's arrest with members of the Vice crew or didn't and whether or not those discussions or the lack thereof would bear on the officer's credibility

seems to the Court to be, based on the record before it, merely theoretical and exploratory and does not rise to the level of highly relevant.

The second aspect of Vice's involvement that Thompson focuses on with respect to his relevancy argument concerns the crew's filming of the arrest itself. Thompson claims that this eleven minutes of footage "will definitively show whether the handgun was—as Officer Hinson claims—in plain view[,] hanging halfway out of the pouch . . . on the back of Mr. Thompson's wheelchair[] or[] whether it was inside of a closed backpack which was illegally searched . . . ." (Def.'s Resp. DE 44, 6.) The Court finds this contention equally speculative—whether or not the footage actually shows this information appears to be pure conjecture and merely exploratory at this point. Without more of a showing, the Court cannot conclude that this footage is necessarily "highly relevant." *See In re Behar*, 779 F. Supp. 273, 275 (S.D.N.Y. 1991) (finding that a "vague and wholly unsupported allegation falls far short of the 'clear and specific showing' of materiality and relevance required" for disclosure) (quoting *U.S. v. Burke*, 700 F.2d 70, 76-77 (2d Cir. 1983)).

But even if Thompson were to come forward with concrete support for his contention that the information sought is highly relevant, he has still failed to establish that the information sought is either (2) necessary to the proper presentation of the case or (3) unavailable from other sources. In support of his claim that the footage is necessary to the proper presentation of his case, Thompson submits that "Vice's recordings are undoubtedly the *best* evidence of the then existing facts and circumstances giving rise to [his] arrest . . . ." (Def.'s Mot. DE 44, 8 (emphasis added).) In so contending, Thompson misapprehends the standard. The probative value of the evidence sought is not the issue under this prong of the analysis but rather whether the evidence is actually required for the presentation of a case: even if the Court were to accept Thompson's argument that the footage is

4

the "best evidence," this does not mean that it is the only evidence. Just because evidence is useful, does not mean that it is necessary. Although Thompson repeatedly declares that the footage is necessary, the support he offers, even if accepted as true, would merely establish that he thinks the footage would be very helpful to him. Again though, very helpful is not the standard. In other words, Thompson has failed to show that it would be actually impossible for him to succeed on his claims without the subpoenaed evidence. *See McCarty*, 195 F.R.D. at 47 (finding that a party did not meet the standard when he "failed to show that he would be unable to succeed on his claims without [the] testimony").

Similarly, Thompson has not met his burden in establishing that the information sought is (3) unavailable from other sources. In support of his contention that he satisfies this prong of the test, Thompson submits that "the uncontroverted record evidence is that Vice made the only recordings of Mr. Thompson's arrest" and that, simply, "*there is no alternative source* for the video and audio that [he] seeks." (Def.'s Mot. DE 44, 9-10 (emphasis in orginal).) Again, Thompson misstates the standard. It is not whether the form of the evidence itself is unavailable but, rather, whether the information revealed by the evidence is otherwise unavailable. So long as there are alternative sources for the *information*, Thompson cannot meet his burden. *Caporale*, 806 F.2d at 1504 (finding no exhaustion where information sought from journalist was available from law enforcement). Thompson himself notes that the "camera crew shadowing [the officer] would have been in a position to *corroborate* [the officer's] assertion." (Def.'s Mot. DE 44, 9 (emphasis added).) If the camera crew's information would be merely corroborative, it would follow that their footage too would also be duplicative. Further, according to an affidavit filed by Laven, in addition to the officers on scene, many other people were present at the time of the arrest. (Laven Aff. at ¶ 10; DE 37-1, 3.) As a matter

5

of well established law a journalist's privilege cannot be abrogated based upon a failure to obtain information from other readily-available sources. *See Shoen v. Shoen*, 5 F.3d 1289, 1297 (9th Cir. 1998) (holding that party failed to exhaust all reasonable alternative sources where the party neglected to depose the defendant before seeking compelled testimony from a journalist); *Zerilli v. Smith*, 656 F.2d 705, 714-15 (finding that party failed exhaust alternative sources by not deposing four government sources).

In sum, Thompson has not met his burden in establishing that Vice or Laven should be compelled to provide the information or evidence sought. For the foregoing reasons then, the motion to quash by Vice Media, Jonathan Lutsky, and David Laven (DE 37) is hereby GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida this 10th day of April 2015.

_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE